Case No. 2:26-cv-00179-LEW

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

DARREN GUAY, MARY DOWNING, and
RODNEY DOWNING,

Plaintiffs,

v.

TOWN OF BERWICK,

Defendant.

Case No. 2:26-cv-00179-LEW

**PLAINTIFFS' REPLY IN SUPPORT OF RENEWED MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

The Town of Berwick's Opposition (ECF No. 28) is a carefully constructed attempt to paper over a constitutionally defective process with self-serving declarations and selective citations. It fails. The Town knew the identities, physical presence, and documented disabilities of the people connected to 17 Riley's Run. It chose newspaper publication anyway. It gave disabled owners a four-day window—while the structure remained wide open—to empty a fire-damaged home under threat of permanent exclusion. It assumed exclusive control, left the roof open for months, delayed boarding until after Plaintiff Guay complained the structure was still accessible to unauthorized persons, ignored repeated requests concerning a deceased family dog that became a biohazard under the Town's exclusive control, and now conditions even temporary housing on the owners' own land upon permits the Town itself has made practically impossible to obtain while the property remains posted. It obtained a demolition order based solely on the untested visual impressions of a single code enforcement officer who is not a structural engineer. And it did all of this while refusing to designate an ADA coordinator or engage in any interactive process.

Case No. 2:26-cv-00179-LEW

These are not technical irregularities. They are independent violations of the Due Process Clause of the Fourteenth Amendment, Title II of the Americans with Disabilities Act (42 U.S.C. § 12132), and 42 U.S.C. § 1983. They render the April 21, 2026 Findings and Order void *ab initio*. They establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). And they require immediate preliminary relief so that the disabled owners may enter their own property at their own risk, retrieve what remains, assess the structure with the benefit of twenty-five years of hands-on post-fire recovery experience, place temporary living quarters if needed, and stop the ongoing destruction the Town itself set in motion.

Critically, the Town now concedes in its own Opposition and Wilson Declaration that it "would not object" to Plaintiffs accessing the Property at their own risk to retrieve personal property and perform mitigation measures, and that after mitigation it "would not object" to placement of a recreational vehicle. Wilson Decl. ¶¶ 58–59. That concession alone eviscerates any claim of irreparable harm to the Town or the public from the limited access Plaintiffs seek. The only remaining barrier is the Town's own unlawful posting and its insistence on permits that cannot be meaningfully pursued while the property remains under an unappealable (because unnoticed) demolition order whose deadline is today—July 19, 2026.

Maxim: *Quod ab initio non valet in tractu temporis non convalescit* — that which is void from the beginning does not become valid by the passage of time. Maxim: *Nullus commodum capere potest de injuria sua propria* — no one may take advantage of his own wrong. Maxim: *Audi alteram partem* — hear the other side. The Town has violated all three.

## I. DEFECTIVE NOTICE UNDER 17 M.R.S. § 2857 AND THE DUE PROCESS CLAUSE RENDERS THE ENTIRE PROCESS VOID AB INITIO

Maine law is mandatory. Notice of a dangerous-building proceeding "must be served on the owner and parties in interest in the same way service of process is made in accordance with the Maine Rules of Civil Procedure." 17 M.R.S. § 2857. Publication is permitted only when "the name or address of an owner or party in interest is unknown or is not ascertainable with reasonable diligence." *Id.* The Town's own Declaration admits that Code Enforcement Officer Wilson spoke directly with Plaintiff Darren Guay on March 12, 2026, advised him of the impending securing of the property, and gave him a four-day window to retrieve personal property. Wilson Decl. ¶¶ 19–20. The Town therefore had actual, personal knowledge of Guay's identity, presence, and connection to the property. It had the same practical knowledge with respect to Mary Downing. Publication was not authorized.

Even if publication were technically available under the statute, the Due Process Clause requires more when the government knows the identity and location of the persons whose property interests are at stake. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action"); *Jones v. Flowers*, 547 U.S. 220, 229–30 (2006) (when the government knows or should know that notice is not reaching the intended recipient, additional reasonable steps are required). Newspaper publication directed to an address the Town itself could not verify, after the Town had spoken face-to-face with one of the occupants, is the antithesis of notice "reasonably calculated" to reach the persons whose home and livelihood were at stake.

The Town's claim that it had "no record" of Rodney Downing's irrevocable authorization is irrelevant. Guay and Mary Downing were known occupants with possessory interests. They were entitled to personal notice of any hearing that would permanently bar them from their residence

and order its demolition. The Town's failure to provide it voids the April 21, 2026 determination and every subsequent enforcement step.

## II. RULE 80B IS NOT AN EXHAUSTION REQUIREMENT FOR FEDERAL CONSTITUTIONAL AND ADA CLAIMS

The Town's central procedural due-process argument is that Plaintiffs failed to take a Rule 80B appeal and therefore have no federal claim. That is black-letter error. Exhaustion of state administrative or judicial remedies is not required before bringing a § 1983 action. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982); *Felder v. Casey*, 487 U.S. 131, 146–47 (1988). The same rule applies with full force to Title II ADA claims. *See* 28 C.F.R. § 35.172 (administrative complaints optional). The existence of a state post-deprivation remedy may be relevant to a pure procedural-due-process claim under *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Zinermon v. Burch*, 494 U.S. 113 (1990), but only when the deprivation is the result of random and unauthorized conduct. Here the deprivation was the product of an established municipal procedure—the dangerous-building process itself—that the Town applied systematically and that failed to provide pre-deprivation notice reasonably calculated to reach known occupants with disabilities. That is precisely the situation in which a federal court must examine the adequacy of the process *before* the deprivation becomes final.

Moreover, a Rule 80B appeal would have been futile. The Town's own publications and the Wilson Declaration make clear that the Select Board's determination rested solely on the CEO's visual impressions. No structural engineering report, no load calculations, no independent inspection appears in the record. An appeal limited to the administrative record would have been an empty exercise. Federal courts do not require litigants to pursue futile state remedies as a precondition to vindicating federal rights.

## III. THE TOWN'S CONDUCT SHOCKS THE CONSCIENCE AND VIOLATES SUBSTANTIVE DUE PROCESS

The Town's Opposition reduces substantive due process to a slogan: "safety concerns cannot shock the conscience." That is not the law. Conduct that is "extreme and egregious," "truly outrageous, uncivilized, and intolerable," or that demonstrates deliberate indifference to a known risk of serious harm to a discrete class of persons can and does violate substantive due process. *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *Irish v. Fowler*, 979 F.3d 65, 75 (1st Cir. 2020); *Wadsworth v. Nguyen*, 129 F.4th 38, 64 (1st Cir. 2025).

Here the Town: (1) knew the structure was open and that people were entering it; (2) delayed securing it for two weeks while the roof remained off and the interior was exposed to the elements; (3) gave known disabled occupants four days to retrieve their entire lives under threat of permanent exclusion; (4) barred them from returning while simultaneously leaving the structure open long enough for further deterioration and for a family pet to become a biohazard under the Town's exclusive control; (5) obtained a demolition order without any engineering assessment; and (6) continues to condition even temporary housing on permits that cannot be obtained while the unlawful posting remains in force. That pattern is not ordinary discretionary permitting. It is deliberate indifference to the known disabilities and property interests of the occupants, compounded by the Town's own creation or substantial aggravation of the very hazards it now cites. That is conscience-shocking.

## IV. THE ADA CLAIM IS FULLY RIPE AND INDEPENDENTLY SUPPORTS INJUNCTIVE RELIEF

The Town asserts that Plaintiffs "have not developed any arguments" on the ADA claim and have therefore waived it. That is false. The Amended Complaint expressly pleads Title II violations based on the Town's failure to provide reasonable accommodations for known

physical disabilities in the administration of the dangerous-building process. The Renewed Motion reiterated that the abbreviated timeline and total exclusion were especially burdensome precisely because of those documented disabilities. Title II requires public entities to make reasonable modifications in policies, practices, and procedures when necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7). It also requires designation of an ADA coordinator and publication of grievance procedures. 28 C.F.R. §§ 35.107, 35.106. The Town did none of these things.

A four-day retrieval window given to persons with documented physical disabilities, followed by total exclusion and a demolition order obtained without any accommodation or interactive process, is textbook disability discrimination in the provision of municipal services. Injunctive relief is the ordinary and preferred remedy under Title II. 42 U.S.C. § 12133; *Tennessee v. Lane*, 541 U.S. 509 (2004). The claim is neither waived nor secondary; it is an independent and sufficient ground for the preliminary injunction Plaintiffs seek.

## V. PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE HARM

The Town's irreparable-harm argument rests on three false premises: (1) that all remaining harm is purely economic and compensable by damages; (2) that Plaintiffs had a meaningful opportunity to retrieve property between March 12 and 16; and (3) that the Town has no present intention to demolish. Each is wrong.

First, the loss of unique personal property, family documents, specialized disaster-recovery equipment essential to Guay's 25-year livelihood, and the ongoing inability to stabilize a structure that continues to deteriorate under exclusive Town control cannot be fully redressed by money damages. The First Circuit has never held that every property interest is automatically compensable; the inquiry is whether the harm is "irreparable" in the practical sense that

monetary relief after the fact will not restore the status quo. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18–19 (1st Cir. 1996). Continued exclusion while the structure and its contents are exposed to the elements produces precisely that kind of harm.

Second, a four-day window given to persons with documented physical disabilities, while the structure was still unsecured and dangerous, is not a "meaningful opportunity." The Town's own Declaration confirms that the property remained accessible to unauthorized persons after the initial posting. Wilson Decl. ¶¶ 30, 36. The Town cannot simultaneously claim the property was too dangerous for the owners to enter and that the owners should have emptied it in four days.

Third, the demolition deadline under the April 21 Order is today—July 19, 2026. The Town's representation that it "has no current plans" and "intends to wait until this lawsuit is resolved" is a non-binding statement of present intent. It does not vacate the Order. It does not bind successor officials. And it does not prevent the Town from reversing course the moment this Court denies interim relief. Plaintiffs are entitled to an injunction that prevents irreversible demolition, not a hope that the Town will continue to exercise forbearance.

Finally, the Town's own concessions in Wilson Decl. ¶¶ 58–59 fatally undermine any claim of irreparable harm to the Town or the public. If the Town is willing to permit access at Plaintiffs' own risk and eventual placement of temporary housing once mitigation occurs, then the limited, time-limited access Plaintiffs request imposes no cognizable hardship on the Town whatsoever.

## VI. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVOR PLAINTIFFS

The public interest is not a blank check for municipal overreach. The public interest includes the enforcement of constitutional rights, the protection of disabled persons from discrimination by public entities, and the prevention of irreversible destruction of private property without due

process. *See Doe v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021) (public interest analysis merges with equities when government is the opposing party, but does not eliminate the need to weigh constitutional interests). Here the equities are one-sided: Plaintiffs seek only the right to enter their own property at their own risk for a limited period to retrieve what remains and to mitigate further damage. The Town, by its own admission, faces no concrete hardship from that limited relief. The balance tips decisively in Plaintiffs' favor.

## VII. MONELL LIABILITY IS ESTABLISHED BY THE SELECT BOARD'S OWN ACTIONS

The Town cannot hide behind the actions of a single code enforcement officer. The Select Board itself held the hearing, received the evidence (such as it was), declared the building dangerous, and ordered demolition. Those are official acts of the municipality's final policymaking body. *Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). The failure to provide constitutionally adequate notice, the failure to accommodate known disabilities, and the reliance on untested lay opinion as the sole basis for ordering the destruction of a family's home are all decisions attributable to the Town itself. Municipal liability is established.

## CONCLUSION AND REQUESTED RELIEF

The Town's process is void. Its Opposition is built on that void process. The Town created or substantially worsened the conditions it now cites. The disabled owners remain excluded from their own land and prohibited even from placing temporary housing on it while a demolition deadline expires today. Immediate relief is required.

Plaintiffs respectfully request that the Court:

Case No. 2:26-cv-00179-LEW

(a) Declare the April 21, 2026 Findings and Order void *ab initio* for failure of mandatory notice under 17 M.R.S. § 2857 and for violation of the Due Process Clause and Title II of the ADA;

(b) Immediately enter a Temporary Restraining Order and Preliminary Injunction granting Plaintiffs unrestricted, unsupervised access to 17 Riley's Run at Plaintiffs' own risk, for a period of not less than fourteen (14) consecutive days (or such longer period as the Court deems just), commencing no later than 9:00 a.m. on the first business day after entry of the Order, for the purposes of retrieving personal property, pumping basement water, removing any biohazard, assessing and documenting the structure, and placing temporary living quarters on the property;

(c) Enjoin all Town officers, employees, agents, contractors, and coordinating law-enforcement personnel from stopping, detaining, interrogating, surveilling, or otherwise interfering with Plaintiffs in connection with that access;

(d) Enjoin the Town from prohibiting the placement of temporary living quarters (RV, trailer, or similar) on the property at Plaintiffs' own risk and expense during the period of court-ordered access and while the merits remain unresolved;

(e) Enjoin collection of any boarding charge, special tax, or lien arising from the void process; and

(f) Grant such other and further relief as the Court deems just and proper, including an award of fees and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

Dated: July 19, 2026

Respectfully submitted,



_____                              _____
Darren Guay, Pro Se

Case No. 2:26-cv-00179-LEW



_____                    _____
Mary Downing, Pro Se



_____                    _____
Rodney Downing, Pro Se

25 Tamarack Drive
South Berwick, ME 03908
darrenguay@gmail.com
(207) 200-6982

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2026, a true and correct copy of the foregoing Reply was served upon counsel for Defendant Town of Berwick by CM/ECF and by first-class mail, postage prepaid, at the address of record for Monaghan Leahy, LLP.

_____                    _____
Darren Guay